IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

vs.                                        Case No. 04-40142-01-SAC

PEDRO XAVIER NAZARIO-RIVERA,

Defendant.

MEMORANDUM AND ORDER

This case comes before the court on defendant's motion to suppress

(Dk. 22).[1]  The government opposes the motion.  Defendant, charged with one

count of possession with intent to distribute cocaine, contends that he was illegally

detained during the search of a vehicle he drove, and that he did not consent to a

search of the vehicle.  The government counters that defendant lacks standing to

challenge the search of the vehicle, but that in any event, the officer had reasonable

suspicion to detain defendant and that defendant consented to the search of the

vehicle.

**FACTS**

On October 29, 2004, at approximately 10:47 a.m., Trooper Scott

---

[1]At the evidentiary hearing, defendant's counsel withdrew defendant's
motion for discovery (Dk. 48).

Morris of the Kansas Highway Patrol (KHP) stopped a vehicle because of a registration violation.[2]  The car stop occurred on I-70, in Wabaunsee County, Kansas.  The vehicle displayed a regular registration plate on the rear bumper, as well as a paper temporary registration tag in the rear window.  A bracket covered the State designation on the registration on the rear bumper.  Trooper Morris was not able to read the State designation on the temporary registration tag in the window from his vehicle.

Trooper Morris approached the driver, the sole occupant in the vehicle, and asked for his driver's license and vehicle information.  Defendant, the driver, responded that he did not speak English. Trooper Morris testified that although he does not speak Spanish, he has learned some Spanish words to assist in traffic stops, that he used them, and that he and defendant were able to communicate.  Defendant responded appropriately to the questions or instructions given by the trooper, and never indicated by his words or actions that he did not understand what he was being asked.  Defendant produced a Pennsylvania driver's license identifying himself as Pedro Nazario-Rivera as well as the registration showing the vehicle was registered to Jessica Padilla, of Lancaster, Pennsylvania.

During his initial contact at the driver's door of the vehicle, Trooper

---

[2]No challenge is made to the initial stop.

Morris noticed a strong odor of fabric softener.   He also found defendant to be

overly nervous, as shown by his trembling hands, his rapid heart rate evident in the

pulse of defendant's neck, and his visibly pronounced breathing.  Trooper Morris

testified that defendant was more nervous than most persons he stops for traffic

violations, and that defendant's nervousness did not abate but rather escalated

throughout the stop.  He asked where defendant was traveling from, and defendant

responded that he was going to Pennsylvania from Colorado where he had been

visiting his family, and that this was not his vehicle.

Trooper Morris returned to his patrol car and wrote a warning for the

registration violation.  He then reapproached the vehicle, gave the warning to

defendant, and returned his paperwork.  Defendant admits that the trooper then told

him, "Have a safe trip, take care," and that he prepared to leave.  Trooper Morris

then asked defendant if he could ask him some questions, and defendant agreed.

Trooper Morris asked if defendant was transporting any drugs or guns, using the

Spanish words for those nouns, and defendant replied that he was not.

Trooper Morris then asked defendant if he could search the vehicle.

Trooper Morris testified that defendant consented to the search by nodding his

head in agreement.  Defendant did not testify at the suppression hearing but states

in his declaration in support of his suppression motion that he did not consent to

the search of the vehicle.  Defendant exited the vehicle and moved to its rear,

where he was frisked.

Lt. Jimerson of the KHP arrived to assist Trooper Morris.

During the search,  Lt. Jimerson said he noticed a strong odor of fabric softener in

the area of the center post on the passenger side, between the front and rear seats of

the vehicle. Trooper Morris removed some of the trim along the bottom of the front

passenger side door frame. On the bottom of the door frame,  Trooper Morris saw

that some body work had been done, and saw some duct tape and plastic wrap

inside the rocker panel.  This convinced Trooper Morris that there was a false

compartment in defendant's vehicle which contained contraband.  Defendant, who

had watched the search without objection or protest, was then handcuffed and

placed in the patrol car.

Trooper Morris then used his certified canine drug dog, Targo.  After

Targo's positive indication near the right front door, Lt. Jimerson removed some of

the carpet along the rocker panel, and the troopers observed a trap door at the

bottom of the center post on the passenger side.  Another trap door was also

located in the same location on the driver's side.  A piece of small brown rope was

sticking out of this door.  Jimerson was able to stick a screw driver into some of the

plastic wrap, and observed a white, powdery substance which subsequently tested

positively for cocaine.  Defendant was then arrested.  Additional drugs and
currency were found when the vehicle was searched at Troop B garage.

**Detention**

Defendant alleges that he was illegally detained after the trooper
concluded the traffic stop.   Defendant admits that Trooper Morris returned his
paperwork and told him to have a safe trip, then asked him other questions.
Defendant contends solely that he did not consent to any search and that because
he did not, his detention during the search was unconstitutional.

**Standing**

Defendant lacks standing to challenge the search of the vehicle, since
he has not met his burden of establishing "that he gained possession from the
owner or someone with authority to grant possession." *United States v. Arango*,
912 F.2d 441, 445 (10th Cir.1990).  Mere possession of the car and its keys does
not suffice to establish a legitimate possessory interest. *United States v. Martinez*,
983 F.2d 968, 973 (10th Cir. 1992).  Nonetheless, because defendant has standing
to claim that his detention was illegal and may claim that the search of the vehicle
was the product of his illegal detention, *see United States v. DeLuca,* 269 F.3d
1128, 1131 (10th Cir. 2001), the court examines the merits of the consent issue.

**Consent - General Law**

The law relating to consent to car searches is well established.

If the person in control of a car voluntarily consents to its search, the officers may search the car without a warrant and not violate the Fourth Amendment. *United States v. Taverna*, 348 F.3d at 878. Voluntariness is a question of fact to be determined from the totality of all the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). A court makes this determination without presuming the consent was voluntary or involuntary. *United States v. Hernandez*, 93 F.3d at 1500.

For this [consent] exception to apply, the government must prove by a preponderance of the evidence that consent was freely and voluntarily given. *United States v. Soto*, 988 F.2d 1548, 1557 (10th Cir. 1993). The government does not discharge its burden "by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 549, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968). Under the two-part test for determining whether consent to search was given, the government must: "(1) proffer clear and positive testimony that consent was unequivocal and specific and freely and intelligently given; and (2) prove that this consent was given without implied or express duress or

coercion." *United States v. Taverna*, 348 F.3d at 878.  This determination is

made upon considering the totality of the circumstances.  *Schneckloth*, 412

U.S. at 225-27, 93 S. Ct. 2041.

*United States v. Olivas*, 351 F. Supp. 2d 1180, 1186 (D. Kan. 2004).

Following the traffic stop, the government argues a consensual

encounter was established.

"A consensual encounter is the voluntary cooperation of a private citizen in

response to non-coercive questioning by a law enforcement officer." *United

States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996).  Supreme Court

precedent is clear "that a seizure does not occur simply because a police

officer approaches an individual and asks a few questions.  So long as a

reasonable person would feel free 'to disregard the police and go about his

business,' the encounter is consensual.' " *Florida v. Bostick*, 501 U.S. 429,

434 (1991) (quoting *California v. Hodari D.*, 499 U .S. 621, 628 (1991)).

"A police officer does not have to inform the citizen they are free to

disregard any further questioning for the encounter to be consensual."

*United States v. Manjarrez*, 348 F .3d 881, 886 (10th Cir. 2003) (citation

omitted), *cert. denied*, 124 S. Ct. 1622 (2004).  "Only when the officer, by

means of physical force or show of authority, has in some way restrained the

liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968).  In deciding if a police-citizen encounter amounts to a seizure, "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' " *United States v. Hill*, 199 F.3d 1143, 1147 (10th Cir. 1999) (quoting *Bostick*, 501 U.S. at 437), cert. denied, 531 U.S. 830 (2000).  Put another way, "[a] person is seized only when that person has an objective reason to believe he or she is not free to end the conversation with the officer and proceed on his or her way." *United States v. Hernandez*, 93 F.3d at 1498 (citation omitted).  "[E]very case turns on the totality of the circumstances presented." *United States v. Little*, 18 F.3d 1499, 1503 (10th Cir. 1994).  Factors relevant to whether a reasonable person would not feel free to terminate the encounter with police include: the threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged retention of a person's personal effects; a request to follow the officer to the station; interaction in a nonpublic place; and

8

absence of other members of the public.  *United States v. Sanchez*, 89 F.3d

715, 718 (10th Cir. 1996). No one factor is dispositive in this analysis.

*United States v. Glass*, 128 F.3d 1398, 1406 (10th Cir. 1997).  "An officer's

request for consent to search does not taint an otherwise consensual

encounter 'as long as the police do not convey a message that compliance

with their request is required.' "  *United States v. Pena*, 143 F.3d 1363, 1367

(10th Cir.) (quoting *United States v. McCurdy*, 40 F.3d 1111, 1119 (10th

Cir.1994)), *cert. denied*, 525 U.S. 903 (1998).

*United States v. Edgerton*, 2004 WL 2413553, *10 (D. Kan. 2004), *reversed on

other grounds*, 438 F.3d 1043 (10th Cir. 2006).

   The parties agree that Trooper Morris returned the documents to

defendant, gave him a warning, told him to have a safe trip.  At that point,

defendant was no longer detained and was free to leave.  Trooper Morris then

received consent to ask additional questions, and asked whether there were any

drugs or guns in the vehicle.  He then asked defendant if he could search the

vehicle.  Trooper Morris testified that defendant consented to the search by

nodding his head as if to say, "OK."

   The court has reviewed the videotape of the stop and the audio

confirms Trooper Morris's testimony about the conversation he had with

defendant, but does not clearly show whether defendant nodded his head when asked for permission to search the vehicle.

Defendant chose not to testify at the suppression hearing.  Instead, his counsel referred the court to defendant's "affidavit," attached to his memorandum in support of his motion to suppress (Dk. 22).  The primary thrust of this declaration is that defendant did not consent to the search of his vehicle.  In his declaration, defendant admits that his paperwork was returned, that he was about to leave, and that he understood the officer's question about having guns or drugs in the vehicle.  Defendant asserts that the officer then said something he did not understand, opened the car door, and gestured for defendant to exit.  Defendant states that he did not consent to the vehicle search, but did not think he could refuse the officer's order to get out of the car.

The court is thus faced with the issue of what weight, if any, to give defendant's declaration.  Rule 47, of course, allows a suppression motion to be supported by affidavits.  But the Note of the Advisory Committee to that rule expressly indicates that it was not intended to authorize "speaking motions," through which the truth of the allegations is challenged.  From defendant's memorandum of law, it appears that defendant's declaration was intended to raise the issue of consent for the purpose of convincing the court of the necessity of an

evidentiary hearing, rather than to serve as evidence at that hearing.

An affidavit or declaration cannot be used in a suppression hearing as a "thinly veiled attempt by the defendant to present his position and avoid the rigors of cross-examination." *United States v. D'Armond*, 80 F. Supp. 2d 1157, 1172 (D. Kan. 1999). As this court has previously found, "It is generally inappropriate for the defendant to have consciously passed on the opportunity to testify at the suppression hearing but expect the court to rely on his ... affidavit in reconsidering its prior rulings." *Id.* The same is true for the court's initial rulings. At the very least, where a defendant makes a factual attack through a "speaking motion," the Court may weigh disputed extrinsic evidence to determine the facts. *See Birdow v. Runyon*, 1998 WL 292832, *1 (N.D. Tex. 1998).

The court has chosen not to disregard defendant's declaration, although it may be proper to do so. Instead, the court has weighed all the evidence, and finds that Trooper Morris's testimony, tested by cross-examination, is more credible than defendant's contrary testimony by declaration. No evidence of coercion, the threatening presence of several officers, the brandishing of a weapon, physical touching by an officer, the use of aggressive language or tone of voice, or other factors pointing toward compulsion was presented. Instead, Trooper Morris stated that his tone of voice was conversational, no voices were raised, no promises

11

or threats were made, no show of force was made, and no effort was made to coerce defendant into consenting to search.  The video tape confirms this testimony, to the extent the audio was activated.  Defendant did not object during the course of the search.

Defendant does not appear to be fluent in English.  Nonetheless, the totality of the facts show that defendant understood Trooper Morris's requests, some in English and some in Spanish, well enough to respond to them and to consent to the vehicle search.  *See United States v. Sanchez- Valderuten*, 11 F.3d 985, 990-91 (10th Cir. 1993) (finding adequate "receptive English language skills" to consent to the search, despite defendant's difficulty in speaking English); *United States v. Marquez*, 2002 WL 1284290, *4 (D. Kan. 2002); *United States v. Valadez-de la Cruz*, 2001 WL 1568356, *3 (D. Kan. 2001) (finding consent voluntary where defendant demonstrated a sufficient understanding of the questions that were asked of him).

Accordingly, the court finds that defendant  freely, intelligently, and voluntarily consented to the search of his car during a consensual encounter with Trooper Morris.  Because he voluntarily consented to the search, he was not illegally detained during the search.

IT IS THEREFORE ORDERED that defendant's motion to suppress (Dk. 22) is denied.

Dated this 17th day of October, 2006, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge